WILLIAMS, J.
 

 liThe defendant, Charles Oliver Burns, was charged by bill of information with two counts of simple burglary, in violation of LSA-R.S. 14:62, and one count of attempted simple burglary, in violation of LSA-R.S. 14:62 and 14:27. Following a jury trial, he was convicted of one count of simple burglary and two counts of attempted simple burglary. The defendant was sentenced to serve twelve years in prison at hard labor for the simple burglary conviction and six years at hard labor for each of the attempted simple burglary convictions. The sentences were ordered to be served consecutively. The defendant now appeals. For the reasons set forth herein, we affirm.
 

 FACTS
 

 On September 7, 2007, at approximately 12:15 a.m., Teresa Thomas, the manager of the Valero convenience store located at 8800 Jewella Avenue in Shreveport, Louisiana, was notified that the store had been burglarized. Thomas arrived at the store and noticed that the window of the store had been broken and a tray of cigarettes had been taken. Thomas had the store window temporarily covered with plywood and left. The video surveillance tape showed a red or maroon Ford Escort drive up to the store and glass was heard shattering. A black male, wearing a long sleeved white shirt, gray and black vest, dark pants, dark shoes, a watch on his left
 
 *266
 
 wrist and a dark cloth or t-shirt tied over his face, was seen entering the store, running behind the counter, removing a tray of cigarettes and leaving the store with the tray.
 

 At approximately 4:10 a.m., on the same date, an attempted burglary |2was committed at another Valero gas station, located at 5454 West 70th Street in Shreveport. Carla Evans, the assistant manager of that location, responded to the call and found that the outer pane of glass was broken but the inner, bullet-proof glass remained intact. No entry had been made. The surveillance video showed a red/maroon Ford Escort and an individual wearing the same clothing shown in the video of the burglary that had occurred at the Jewella Avenue store.
 

 At approximately 4:20 a.m., Thomas was called back to the Jewella Avenue store in reference to another burglary. Thomas reviewed the video surveillance tape and observed a red/maroon Ford Escort drive up outside the entrance. The person entered the store and grabbed another tray of cigarettes. The video of the second burglary showed the offender in the same ear, wearing the same clothes and mask. The person moved away from the view of the cameras and a “crashing” sound was heard.
 

 The Shreveport Police Department (“SPD”) issued a “be on the lookout order” (“BOLO”) for the red/maroon Ford Escort. Approximately four hours after the last burglary, Deputy David Emberton of the Shreveport City Marshal’s office observed a red/maroon Ford Escort. The deputy unsuccessfully attempted to stop the vehicle, and a low-speed chase ensued, ending at the residence of the defendant’s mother. There, the defendant was placed under arrest.
 

 On October 17, 2008, the defendant was charged by bill of information with two counts of simple burglary and one count of attempted simple burglary. Following a jury trial, he was convicted of one count of ^simple burglary and two counts of attempted burglary. The trial court denied the defendant’s motions for new trial and post-verdict judgment of acquittal. The court sentenced the defendant to serve twelve years in prison at hard labor for the simple burglary conviction and six years at hard labor for each of the attempted simple burglary convictions. The sentences were ordered to be served consecutively. Thereafter, the court denied the defendant’s motion to reconsider sentence. The defendant now appeals his convictions and sentences.
 

 DISCUSSION
 

 Sufficiency of the Evidence
 

 The defendant contends the evidence was insufficient to prove, beyond a reasonable doubt, that he committed the offenses. He argues that the state failed to present any physical evidence to connect him to the crimes.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Cummings,
 
 95-1377 (La.2/28/96), 668 So.2d 1132;
 
 State v. Murray,
 
 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488,
 
 writ denied,
 
 2002-2634 (La.9/5/03) 852 So.2d 1020. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, |4does not provide the appellate court "with a vehicle to substitute its own
 
 *267
 
 appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165.
 

 The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Gilliam,
 
 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/13/03), 858 So.2d 422.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.App. 2d Cir.1/14/09), 2 So.3d 582;
 
 State v. Parker,
 
 42,311 (La.App. 2d Cir.8/15/07), 963 So.2d 497.
 

 In cases involving a defendant’s claim that he was not the person who committed the crime, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 State v. Hughes,
 
 2005-0992 (La.11/29/06), 943 So.2d 1047;
 
 State v. Powell,
 
 27,959 (La.App. 2d Cir.4/12/96), 677 So.2d 1008,
 
 writ denied,
 
 96-1807 (La.2/21/97), 688 So.2d 520. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Wiltcher,
 
 41,-981 (La.App. 2d Cir.5/9/07), 956 So.2d 769. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant.
 
 State v. Robinson,
 
 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207;
 
 State v. Ponsell,
 
 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678,
 
 writ denied,
 
 2000-2726 (La.10/12/01), 799 So.2d 490.
 

 In the instant case, the manager, Teresa Thomas, testified that she was notified of two separate burglaries of the same store on the morning in question. Thomas also testified that the store was equipped with surveillance cameras which recorded the offenses, and at the time of both incidents, the store was closed to the public and no one had permission to enter the store.
 

 The video surveillance tape from the Jewella Avenue store was introduced into evidence and shown to the jury during Thomas’ testimony. The video began at 12:15:50 a.m. on September 7, 2007. The video depicted a red car drive up to the entrance of the store. From the video, glass was heard breaking and the store’s alarm sounded. A black male, wearing a long sleeved white shirt, gray and black vest, dark pants, dark | (¡shoes, a watch on his left wrist and a dark cloth tied over his face, was observed entering the store. The man ran behind the counter, removed a tray of cigarettes and left the store with the tray. The second video, which began on September 7, 2007 at 4:19:57 a.m., showed the same red car approach the store. Glass was heard breaking and a person, dressed in the same clothing as the person in the first video, was seen entering the store. The person grabbed another tray of cigarettes and exited the view of
 
 *268
 
 the camera followed by a loud crashing sound. No one was seen leaving the store.
 

 Corporal Jeff Nelson of the SPD was the first responding officer to the first burglary. Cpl. Nelson testified that he attempted to obtain fingerprint evidence from the scene, but was unable to do so. He also stated that no attempt was made to obtain DNA evidence from the scene because “there was no blood.”
 

 Evans, the assistant manager of the Va-lero store on West 70th Street, testified that she was notified that a burglary occurred at the store on the morning of September 7, 2007. She stated that she reported to the store and observed shattered glass on the sidewalk, where the outer pane of the glass door had been broken. Ms. Evans testified that the store was equipped with surveillance cameras which recorded the offense. She also testified that the store was closed to the public at the time of the attempted burglary and that no one had permission to enter the store.
 

 The video surveillance from the West 70th Street store was also introduced into evidence at the trial and was shown to the jury during 17Evans’ testimony. The video began at 4:09:16 a.m. on September 7, 2007. On the video, the same red car depicted in the other videos was seen approaching the entrance to the store. A man, wearing the same clothing as the person on the other surveillance tapes, exited the car and threw an object at the door. The glass shattered but did not break completely. The man then attempted to break the glass by kicking it. He was unable to shatter the glass, so he drove away.
 

 Officer A.J. Kelly of the SPD was dispatched to the attempted burglary on West 70th Street. Officer Kelly testified that the doors to the store were made of double-pane glass and that the outer pane shattered, but the inner, bullet-proof pane, remained intact. A footprint mark was noticed on the glass, which indicated an attempt to break the second pane.
 

 Deputy Emberton testified that on the morning of the incident, he received a BOLO report for a red/maroon Ford Escort in relation to some crimes that had occurred earlier that morning. Deputy Emberton testified he saw a vehicle matching that description and attempted to stop the vehicle for a traffic violation. The deputy also testified that he activated his siren and ordered the driver to stop over the PA system; the driver refused to stop.
 

 A videotape depicting the “chase” and arrest of the defendant was introduced into evidence and played for the jury. The videotape showed that while stopped at a red light, Deputy Emberton positioned his vehicle in front of the vehicle driven by the defendant. The defendant quickly maneuvered around the deputy’s car. During the pursuit, the defendant was observed throwing an object out of the window, which was later identified |8as the cloth he had worn over his face during the offenses. The pursuit ended at the residence of the defendant’s mother, where the defendant was arrested.
 
 [1]
 

 
 *269
 
 Officer Brad Sotak of the SPD testified that he was assigned to patrol on the morning of the incident, when Deputy Em-berton called and requested assistance. Officer Sotak testified that he participated in the slow chase to the residence of the defendant’s mother. Upon arrival, he exited his vehicle with his weapon drawn and assisted in the arrest of the defendant.
 
 [2]
 

 Detective Angie Willhite, an investigator with the SPD, testified that she heard over the radio that Deputy Emberton was pursuing a suspect, and she joined the chase. Det. Willhite also testified that Officer So-tak informed her that the suspect had been observed throwing an object out of the vehicle, so she disengaged from the pursuit and attempted to locate the object. She described the recovered item, which was introduced into evidence, as “a piece of t-shirt, a couple of pieces.”
 

 Detective Shannon Mack, a property crimes investigator with the SPD, testified that she interviewed the defendant three days after he was arrested. The interview was recorded, and the audiotape was introduced |ainto evidence and played for the jury. Det. Mack also executed the search warrant for the defendant’s car which recovered glass shards in the floorboard of the vehicle. Det. Mack testified that she collected, as additional evidence, the clothes that defendant was wearing at the time of his arrest. Det. Mack stated that the defendant never denied committing the crimes, and the defendant was heard on the audiotape attempting to “make a deal.”
 

 Viewing the evidence in a light most favorable to the prosecution, we find that the evidence was sufficient to prove, beyond a reasonable doubt, the defendant’s identity as the person who committed these offenses. The surveillance videos and testimony from the store managers and responding law enforcement officers established that a person driving a red Ford Escort, a car identical to the defendant’s car, wearing clothing identical to the clothing the defendant was wearing at the time of his arrest, broke the glass and entered the Jewella Avenue Valero store two separate times on the same morning. The evidence also established that the same person, driving the same car, attempted to shatter the glass to attempt to gain entry into the store. During the pursuit of the defendant, the defendant was seen throwing a piece of cloth out of his window. The cloth was recovered and was found to be identical to the dark cloth which was seen tied around the offender’s face on the videotapes. The defendant was driving a red Ford Escort when he was pursued and arrested, and he was wearing dark pants, dark shoes and a watch on his left wrist, all of which appear to be that worn in the surveillance recording. Those items were introduced into evidence and | ulshown to the jury. Pieces of glass were also recovered from the defendant’s vehicle.
 

 The jury also heard the audiotape of the defendant’s inculpatory statements to Det. Mack. During the interview, the defendant repeatedly attempted to “cut a deal” with the detective, who advised him that she was unable to do so. At one point during the conversation, the detective told the defendant that he might have left fingerprints at the convenience stores. The defendant inquired into which location (Jewella Avenue or West 70th Street) he possibly could have touched something, asking, “[Wjhere I went the first time and
 
 *270
 
 then came back?” The defendant admitted that he was at the store, but did not remember touching anything at the third attempt; however, he was positive that he did not touch anything at the first location. Accordingly, after reviewing the record in its entirety, we find that the evidence presented supports the jury’s conclusion that the defendant was the person who had committed these offenses.
 

 We also find that the evidence was sufficient to establish the essential elements of both offenses beyond a reasonable doubt. “Simple burglary is the unauthorized entering of any dwelling ... or other structure, movable or immovable, ... with the intent to commit a felony or any theft” therein. LSA-R.S. 14:62(A). LSA-R.S. 14:27 provides in pertinent part:
 

 A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
 

 [[Image here]]
 

 |T1In the instant case, a person, who was later identified as the defendant, was observed on a surveillance tape entering the Jewella Street Valero store, running behind the counter, removing a tray of cigarettes and leaving the store with the cigarettes. The defendant was also captured on videotape breaking the glass and entering the same store a second time, again grabbing a tray of cigarettes. The surveillance cameras at the West 70th Street store captured the defendant shattering the outer pane of the door with an object. The defendant was also seen kicking the inner pane, attempting to break the glass.
 

 Additionally, the defendant’s statements to the detective implicated him in the offenses. The defendant admitted that he was present at the store and questioned the officer as to when he could have left a fingerprint at the first store.
 

 After hearing the testimony and viewing the videotapes, the jury concluded that the defendant committed the offense of burglary by entering the store with the intent to commit a felony therein. The jury also concluded that the defendant attempted to commit other burglaries by entering the Jewella Avenue store again and attempting to enter the West 70th Street store. Based on our review of the record in its entirety, we find that the evidence presented proved, beyond a reasonable doubt, that the defendant committed simple burglary and two counts of attempted simple burglary. This assignment of error lacks merit.
 

 Motion to Suppress
 

 The defendant also contends the trial court erred in denying his 112motion to suppress his clothing. Defendant argues that his constitutional right against unreasonable searches and seizures was violated at the jail when Det. Mack removed the defendant’s items of clothing from him, without a warrant, and placed them into evidence.
 

 The right of law enforcement officers to conduct a personal effects inventory search at the time of an arrested person’s booking is a recognized exception to the search warrant requirement. LSA-C.Cr.P. art. 228;
 
 United States v. Edwards,
 
 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974);
 
 State v. Wilson,
 
 467 So.2d 503 (La.1985);
 
 State v. Nuccio,
 
 454 So.2d 93 (La.1984). The police may not, however, seize and introduce into evidence any item that they choose. The item seized and admitted into evidence must be contraband, an instrumentality of the
 
 *271
 
 crime, LSA-C.Cr.P. art. 161(2), a fruit of the crime, LSA-C.Cr.P. art. 161(1), or evidence of a crime,
 
 Warden, Maryland Penitentiary v. Hayden,
 
 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In order for the seizure of a defendant’s clothing and its introduction into evidence to be upheld, the state must affirmatively show the existence of probable cause that the thing seized is somehow related to a particular crime.
 
 State v. Wilson, supra; State v. Nuccio, swpra.
 
 The state must establish a nexus between the item seized and criminal behavior.
 
 State v. Wilson, supra.
 
 “Thus, in the case of ‘mere evidence,’ probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.”
 
 Hayden, supra,
 
 387 U.S. at 307, 87 S.Ct. at 1650.
 

 In
 
 United States v. Edwards, supra,
 
 the defendant was arrested for | ^attempting to break into a United States Post Office. The following day, the clothing that the defendant was wearing at the time of his arrest was taken from him and examined. Inculpatory evidence was discovered in his clothing and was introduced into evidence at trial. The defendant objected, arguing that his clothing, and the results of the examination, were inadmissible because the warrantless seizure was invalid under the Fourth Amendment. The trial court denied the motion to suppress the evidence, and the appellate court reversed. The United States Supreme Court granted certiorari and reversed the appellate court’s decision. The Court stated:
 

 [B]oth the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another placet,] and if evidence of [a] crime is discovered, it may be seized and admitted in evidence. Nor is there any doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial.
 

 [[Image here]]
 

 With or without probable cause, the authorities were entitled at that point not only to search [the defendant’s] clothing but also to take it from him and keep it in official custody.... The police were also entitled to take from [the defendant] any evidence of the crime in his immediate possession, including his clothing.
 

 415 U.S. at 804-805, 94 S.Ct. 1234 (internal footnotes omitted). The court further stated:
 

 [T]he police had lawful custody of [the defendant] and necessarily of the clothing he wore. When it became apparent that the articles of clothing were evidence of the crime for which [the defendant] was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of crime when it is lawfully encountered .... [I]t is difficult to perceive what is unreasonable about the police’s examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest.
 

 | m415 U.S. at 806, 94 S.Ct. 1234 (internal citations omitted).
 

 In the instant case, at the time the defendant’s clothing was seized, law enforcement had lawful custody of the defendant and his clothing. Upon the defendant’s arrival at the place of detention, police officers were entitled to search his clothing and keep it in official custody. Additionally, it was apparent that the items of clothing the defendant was wearing were evidence of the crimes for which
 
 *272
 
 the defendant had been arrested. The clothing worn by the person depicted on the surveillance videotapes matched the clothing the defendant was wearing at the time of his arrest. The police officers’ conclusion that the clothing would eventually aid in the identification of the defendant as the perpetrator of the crimes was reasonable. Thus, the officers were entitled to take the items, examine them and use them as evidence.
 
 [3]
 
 Accordingly, the seizure and retention of the defendant’s clothing, without a warrant, was lawful. This assignment lacks merit.
 

 Motions for Mistrial
 

 | )r,The defendant also contends the trial court erred in denying his motions for mistrial. He argues that a mistrial should have been granted for the following reasons: (1) he was prejudiced and was unable to adequately prepare his defense because he was not given a copy of the supplemental report which identified injuries to his hands that were visible at the time of his arrest; (2) one of his cousins was on one of the jury panels during voir dire and could have possibly spoken to other members of the jury panel about the defendant’s criminal history; (3) he was prejudiced by the prosecutor’s comments with regard to the jury being informed that there was “no evidence to exclude” the defendant from being at the scene of the crimes; and (4) he was prejudiced when the prosecutor elicited testimony from Det. Mack with regard to evidence of past crimes.
 

 Upon a defendant’s motion, a mistrial shall be ordered, and in a jury case, the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. LSA-C.Cr.P. art. 775. Because a mistrial is a drastic remedy, it should be granted only when the error resulted in substantial prejudice sufficient to deprive the defendant of any reasonable expectation of a fair trial.
 
 State v. Turner,
 
 37,162 (La.App. 2d Cir.3/26/04), 859 So.2d 911;
 
 State v. Sloan,
 
 29,787 (La.App. 2d Cir.9/24/97), 701 So.2d 995. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court’s discretion and will not be disturbed absent an abuse of discretion.
 
 Id.
 

 It is well settled that a criminal defendant is entitled to material that is of an exculpatory nature. See, LSA-C.Cr.P. art. 718;
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, there is no constitutional requirement that the prosecution’s complete case be revealed to the defendant.
 
 United States v. Agurs,
 
 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976);
 
 State v. Joseph,
 
 379 So.2d 1076 (La.1980).
 

 LSA-C.Cr.P. art. 718 provides, in pertinent part:
 

 
 *273
 
 Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
 

 (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
 

 (2) are intended for use by the state as evidence at the trial, or
 

 (3) were obtained from or belong to the defendant.
 

 * * *
 

 LSA-C.Cr.P. art. 723 provides, in pertinent part:
 

 [Tjhis chapter does not authorize the discovery or inspection of reports, mem-oranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case.
 

 In the instant case, we reject the defendant’s argument that he was prevented from adequately preparing a proper defense because the report which indicated that he had suffered lacerations to his hands was not made known to him until the morning of trial. The report in question was prepared by detective Shannon Mack, an agent of the state, in connection with her investigation of the case. Thus, the report was not discoverable by |17the defendant. Additionally, neither a report nor photographs of the defendant’s hands were introduced into evidence during the trial. The only time that the injuries to the defendant’s hands were mentioned was when the audiotape of the defendant’s interview with Det. Mack was played.
 

 We also reject the defendant’s claim that he was prejudiced by the brief appearance of his distant relative on one of the jury panels. LSA-C.Cr.P. art. 797(2) and (3) provides, in pertinent part:
 

 The state or the defendant may challenge a juror for cause on the ground that: (2) The juror is not impartial, whatever the cause of his partiality.... (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant ... is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict.
 

 The record reveals that the first question posed to the prospective jurors during
 
 voir dire
 
 was whether anyone knew the defendant. When the court was informed that defendant’s relative was on the panel, the rest of the panel was removed and an individual
 
 voir dire
 
 of the potential juror took place. The defendant’s relative stated that she could not be impartial and the state moved to strike her as a juror. After being stricken, the relative briefly returned to the panel. The defense moved for a mistrial on the ground that the relative could have tainted the entire panel. The relative was brought back before the court and was asked whether she had spoken to any of the other jury panel members after individual questioning. The relative responded that she had not. Thus, there is no evidence that the jury panel was tainted. This argument is without merit.
 

 The defendant also argues that the trial court erred in denying his J^motion for mistrial based on statements made by the prosecutor during his opening remarks. The record reveals that the prosecutor stated:
 

 
 *274
 
 [M]y argument is going to be that you’re not going to hear any evidence, evidence, concrete evidence, that excludes Charles Burns from being there. Everything that the evidence is going to be presented to you today points to one person and one person alone, Charles Burns.
 

 A general statement that the prosecution’s case is uncontradicted is not necessarily a prohibited comment on the defendant’s failure to testify.
 
 State v. Bourque,
 
 622 So.2d 198 (La.1993). In
 
 State v. Gatch,
 
 27,701 (La.App. 2d Cir.2/28/96), 669 So.2d 676,
 
 writ denied,
 
 96-0810 (La.9/20/96), 679 So.2d 429, this court addressed the issue of prosecutorial comments regarding a defendant’s refusal to testify, stating:
 

 The Fifth and Fourteenth Amendments to the U.S. Constitution guarantee the right against self-incrimination by prohibiting the prosecution from commenting on the defendant’s failure to take the stand. In addition, La.C.Cr.P. art. 770(3) provides for [a] mandatory mistrial when the district attorney, during argument, refers directly or indirectly to the defendant’s failure to testify in his own defense. However, when the reference is indirect, it constitutes reversible error only when the prosecutor intended to emphasize the defendant’s failure to testify.
 

 Id.,
 
 at 680 (internal citations omitted).
 

 In the instant case, a review of the prosecutor’s remarks indicates that the prosecutor intended to emphasize the abundance of evidence of guilt presented to the jury, rather than the defendant’s failure to testify. Additionally, in response to the defendant’s motion for a mistrial, the state argued that because the evidence was largely circumstantial, its burden was to exclude all reasonable hypotheses of innocence. The court accepted this | ^explanation, and properly denied the motion. When asked whether the defense requested any admonition to the jury, the defense expressly declined to do so. Therefore, this assignment is without merit.
 

 The defendant further argues that the trial court erred in allowing Det. Mack to interject evidence of “other crimes” or other “bad acts” during her testimony. Specifically, the defendant complains of the following colloquy:
 

 PROSECUTOR: [DJuring the course of your interview did the name Mark Scroggins come up at any time?
 

 [DET. MACK]: Yes, sir. PROSECUTOR: And how did Mark Scroggins tie into this?
 

 [DET. MACK]: There was some information—Mark Scroggins owns a small convenience store on Milam Street. There is some information that he buys stolen cigarettes, stolen beer from people on the street. I believe that Mr. Burns and I talked about whether or not some of those cigarettes had gone to him.
 

 PROSECUTOR: And you indicated that you wanted to get Mark Scroggins during the course of the interview?
 

 [DET. MACK]: Yes.
 

 PROSECUTOR: And how did Mr. Burns respond to that?
 

 [DET. MACK]: He responded that if I could make a deal with the DA that he could give me Mark Scroggins.
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. LSA-C.E. art. 404(B)(1). When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is
 
 *275
 
 not admissible, the defendant’s remedy is a request for an admonition or a mistrial pursuant to LSA-C.Cr.P. art. 771.
 
 State v. McGee,
 
 39,336 (La.App. 2d Cir.3/4/05), 895 So.2d 780;
 
 State v. Holmes,
 
 2002-2263 (La.App. 4th Cir.2/26/03), 841 So.2d 80.
 

 A review of the transcript herein reveals that no past criminal acts, Lnwith reference to the defendant, were mentioned during Det. Mack’s testimony. The testimony referred to Mark Scroggins, implicating him in an investigation concerning stolen cigarettes. Although the detective testified that the defendant offered to “give” Scrog-gins in exchange for a deal, there was no testimony that the defendant had ever committed any other “bad” or criminal act. The above-mentioned colloquy only indicates that the defendant had been informed of Scroggins’ behavior. This argument lacks merit.
 

 Excessive Sentences
 

 The defendant contends the sentences imposed were excessive. He argues that the trial court should have considered, as a mitigating circumstance, the fact that his criminal history is directly related to his “severe drug addiction.”
 

 The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890,
 
 writ denied,
 
 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is | ^unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Swayzer,
 
 43,350 (La.App. 2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Ates,
 
 43,327 (La.App. 2d Cir.8/13/08), 989 So.2d 259. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277,
 
 writ denied,
 
 2007-0144 (La.9/28/07), 964 So.2d 351.
 

 Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v.Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App. 2d Cir.1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
 

 The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him 122should not be set aside as excessive in the absence of a manifest abuse of his discretion.
 
 State v.
 
 
 *276
 

 Williams,
 
 2008-3514 (La.12/13/04), 893 So.2d 7;
 
 State v. Thompson,
 
 2002-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Hardy,
 
 39,233 (La.App. 2d Cir.1/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing.
 
 State v. Cook,
 
 95-2784 (La.5/31/96), 674 So.2d 957,
 
 cert. denied,
 
 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.
 
 Id.
 

 In the present case, our review of the record reveals that the trial court took into account the factors set forth in LSA-C.Cr.P. art. 894.1. The court stated:
 

 The Court has reviewed the sentencing guidelines in the Code of Criminal Procedure, Article 894.1. And based on Mr. Burns’ lengthy criminal history — to include forgery, other simple burglaries, and robbery — Mr. Burns is not probatable and must be given a sentence of incarceration.
 

 The Court has reviewed all of the sentencing guidelines. And primarily, based on his lengthy criminal history and the nature of his prior offenses, the Court finds that Mr. Burns has persistently been involved in similar offenses, as the ones for which he’s been convicted, with regard to these three cases— burglaries, and also with robbery, and apparently of prior forgery.
 

 Based on those reasons and the fact that the — Mr. Burns may eventually be adjudicated a third felony offender by the State, the sentence is not in connection with the multi bill at this time. However, the Court believes that the maximum sentence is the appropriate sentence as to each of these counts.
 

 * * *
 

 | g¡The Court further recommends Mr. Burns for any substance abuse treatment program that he may be eligible for during the time of his incarceration.[
 
 4
 
 ]
 

 The sentence for simple burglary is imprisonment for not more than twelve years, with or without hard labor. LSA-R.S. 14:62. The sentence for attempted simple burglary is not more than six years, with or without hard labor. LSA-R.S. 14:62; LSA-R.S. 14:27(D)(3).
 

 In the instant case, the trial court imposed the maximum sentences for each conviction. Prior to imposing the sentence, the court noted that it had considered and reviewed the sentencing guidelines and determined that the sentences were warranted “based on [the defendant’s] lengthy criminal history and the nature of his prior offenses.” The court further noted that the defendant had “persistently been involved in similar offenses,” including two simple burglaries, armed robbery and forgery. It is clear that the court considered the defendant’s drug addiction, as the court recommended substance abuse treatment. We find that the sentences were neither disproportionate to the severity of the offenses nor shocking to the sense of justice. This argument lacks merit.
 

 Consecutive Sentences
 

 The defendant contends the trial court erred in ordering the sentences to be served consecutively. He argues that the sentences should have been or
 
 *277
 
 dered to be served concurrently because the offenses constituted parts of a common scheme.
 

 124When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently, unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory.
 
 State v. Derry,
 
 516 So.2d 1284 (La.App. 2d Cir.1987),
 
 writ denied,
 
 521 So.2d 1168 (La.1988). It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently.
 
 State v. Johnson,
 
 42,323 (La.App. 2d Cir.8/15/07), 962 So.2d 1126.
 

 In this case, the defendant committed three separate offenses, on the same morning, at three separate times, at two separate stores. The first offense occurred at 8800 Jewella Avenue at approximately 12:15 a.m. Hours later, at approximately 4:10 a.m., the defendant attempted to burglarize the store located at 5454 West 70th Street, but was unable to gain entry. Minutes later, the defendant returned to the store located at 8800 Jewella Avenue and committed another offense. Therefore, the offenses clearly did not arise out of the same transaction or occurrence.
 

 Even if the offenses were part of the same scheme, the trial court was not required to order concurrent sentences. It was within the court’s discretion to order consecutive sentences, and we find that the record supports the aggregate 24-year sentence. The defendant has an extensive criminal history, with numerous arrests and convictions, dating back to 1982. In the six-year period leading up to the most recent convictions, the defendant had been convicted of three felonies — once for forgery and twicej^for simple burglary. The determination that the sentences on each conviction were to be served consecutively was within the sound discretion of the trial court. Considering the defendant’s criminal history and the poor potential for the defendant’s rehabilitation, these sentences are not excessive. Additionally, after the sentencing, the state did not file a multiple offender bill as it had planned. The defendant received a substantial benefit from the state’s decision. This argument lacks merit.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the defendant’s convictions and sentences.
 

 CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.
 

 [1]
 

 . Deputy Emberton testified that he drew his weapon prior to approaching the defendant’s vehicle and ordered the defendant to park the car and get out, but the defendant did not comply. When the deputy approached the driver's side of the defendant's vehicle, the defendant placed his hands on the deputy's gun. Deputy Emberton sprayed the defendant with mace and struggled to handcuff the defendant. The defendant continually resisted. Deputy Emberton testified (and included in his report) that he struck the defendant with a closed fist three or four times between the shoulder blades because the defendant would not surrender.
 

 [2]
 

 . Officer Sotak also testified that the defendant was resistant and noncompliant with Deputy Emberton's orders. He described the blows delivered by Deputy Emberton as "dis-tractionary” strikes which intended to end the defendant's resistance, and not intended as punishment.
 

 [3]
 

 . In
 
 State v. Wilson, supra,
 
 soon after a murder, the defendant was apprehended by police officers wearing a suit bearing stains that appeared to be fresh blood. Following the defendant’s arrest, police officers instructed the defendant to remove his clothing, and the clothing was tagged as evidence and sent to the state crime laboratory. Our supreme court found that the search and seizure of the defendant’s clothing was lawful. The court stated:
 

 By any standard, the detectives' conclusion that the bloodstained clothing would eventually aid in the conviction of [the victim’s] murderer is reasonable. The defendant’s bloodstained clothing potentially constituted persuasive circumstantial evidence of his involvement in the homicide. The state had probable cause to seize the clothing as evidence of criminal activity, and the police seizure and retention of such evidence without a warrant was lawful.
 

 Id.
 
 at 517. See also,
 
 State v. Leger,
 
 2005-0011 (La.7/I0/06), 936 So.2d 108.
 

 [4]
 

 . During the sentencing hearing, defense counsel argued that the defendant had been "tortured with drug use his entire life” and had been incarcerated "over and over again" without any treatment for his drug dependency.