MOORE, J.
A jury convicted Jefferson Davis, Jr., as charged for first degree rape, sexual battery of a victim under the age of 13, and indecent behavior with juveniles of a victim under the age of 13. The court imposed the mandatory sentence of life *1197 imprisonment without benefit of parole, probation, or suspension of sentence on Davis for the first degree rape conviction. For the sexual battery of a victim under the age of 13, the court sentenced Davis to 30 years' imprisonment at hard labor, 25 years of which are required to be served without the benefit of parole, probation, or suspension of sentence. For his conviction for indecent behavior with juveniles of a victim under the age of 13, the court sentenced Davis to 20 years' imprisonment at hard labor, 2 years to be served without the benefit of parole, probation, or suspension of sentence. The court ordered the three sentences to be served consecutively. No motion to reconsider sentence was filed.
Davis filed this appeal alleging that the sentences imposed are unconstitutionally harsh. For the following reasons, we affirm the convictions and sentences as imposed by the trial court. We also order that the trial court minutes be amended to reflect the sentencing as imposed in the record.
FACTS
The victim in all three counts was Davis's nine-year-old grandniece, K.M. Davis was 63 years old when he committed the offenses in the spring of 2016. The molestations occurred in Davis's bedroom while he was living with his sister, K.M.'s grandmother, whose backyard abutted the backyard of K.M.'s mother's house. The child sometimes stayed at her grandmother's house when her mother, Quinnette Morris, was at work. The crimes came to light when K.M. described the sexual incidents to her older sister, S.M., who, in turn, reported them to her mother. Quinnette immediately contacted the police.
After a police investigation in which Davis admitted to sexual acts with K.M., the evidence was presented to the grand jury of Caddo Parish, which returned an indictment charging Davis with three counts: Count 1: first degree rape ( La. R.S. 14:42(A)(4) ); Count 2: sexual battery of a victim under the age of 13 ( La. R.S. 14:43.1(A)(1) & (2) ); and, Count 3: indecent behavior with juveniles under the age of 13( La. R.S. 14:81(A)(1) & (2) ). The indictment charged that all of the offenses occurred between March 15 and July 2016.
Trial by jury commenced on April 10, 2018. K.M.'s older sister, S.M., testified that on August 11, 2016 (when K.M. was nine years old), K.M. told her that "Uncle Jeff," i.e., the defendant, had licked her breasts and rubbed his "private part" against her "private part." K.M. also told S.M. that the defendant inserted his finger in her "private part," licked her "private part," and made her lick his private part. Upset by this revelation, S.M. reported it to her mother.
Quinnette Morris testified that S.M. told her about the sexual acts the defendant had performed on K.M. She questioned K.M. and confirmed what S.M. had reported to her. She said K.M. told her that sexual acts began after K.M.'s father died on February 25, 2015. According to Quinnette, the sexual abuse occurred 13-15 times in the defendant's room.
At trial, a videotaped Gingerbread House interview of K.M. was introduced into evidence (Exhibit S-1) and played for the jury. During the interview, K.M. described the sexual acts committed on her by her grand uncle.[1] She described to the *1198 interviewer, Alex Person, how the defendant licked her private parts, sucked her breasts and made her suck his private parts and rubbed his private parts against her. K.M. also described how the defendant tried to put his private part inside her, but that she told him to stop because it hurt, and she knew it was wrong. The child said that the defendant told her that she "had to take it." K.M. said that the defendant did not fully insert his penis inside of her, but rubbed his private part against her body and "white stuff" came out. She also explained that the defendant would lick his pinky finger and make K.M. "pinky promise" that she would not tell anyone about the sexual acts.
Ms. Person testified regarding the Gingerbread House interview of K.M. The interview was held on August 15, 2016. Ms. Person showed K.M. anatomical drawings of a young girl and a grown man, so that K.M. could circle parts of the body that she identified during the interview. (Exhibit S-1). Exhibit S-2 consists of the drawings that K.M. circled the vagina, breasts, and buttocks of the naked girl to show where she had been violated, and she circled the male penis on the drawing of the man and described the sexual acts during the interview.
At trial, K.M. confirmed that she gave the interview at the Gingerbread House, and that everything she said was true. She also testified that Uncle Jeff, the defendant, was the person who committed the sexual acts.
Detective De'Andre Belle, a sex crimes investigator in the Shreveport Police Department, testified that he was assigned the case on August 12, 2016. He contacted K.M.'s mother and set up the Gingerbread House interview for K.M. and her mother on August 15, 2016. He supervised K.M.'s interview and heard the statements that K.M. made during the interview. He said that her statements were consistent with the factual statements K.M. reported that prompted the investigation, namely that her "great uncle" made her perform oral sex on him, performed oral sex on her, touched her vagina and tried to penetrate her vagina with his penis, which he said that she said, "it hurt."
Detective Belle testified that Davis voluntarily came to his office to talk about the incident and signed a Miranda rights form which was admitted in evidence as Exhibit S-4. Belle recorded the interview with Davis, which was authenticated and admitted into evidence at trial as S-5. This recording was played before the jury, after which, Det. Belle testified that the recording corroborated what K.M. had told him. In this taped interview, the defendant admitted that he licked K.M.'s vagina, sucked her breasts, tried to insert his penis in K.M.'s vagina, and that she performed oral sex on him. The defendant also admitted he masturbated with K.M. in the room.
The defense presented no evidence. The jury returned guilty verdicts on all three charges.
The defendant filed a motion for post-verdict judgment of acquittal arguing that the evidence presented by the state failed to prove beyond a reasonable doubt that the defendant committed the crimes for which he was convicted. Further, the defendant argued that the evidence failed to exclude every reasonable hypothesis of innocence, and that after viewing the evidence in the light most favorable to the prosecution, no rational finder of fact would have found the essential elements of the offenses were proven beyond a reasonable doubt.
The trial court considered the motion, and after reviewing the evidence, it disagreed with its premises and denied the motion. The trial court noted for the record *1199 that K.M.'s testimony was quite impressive.
Davis appeared for sentencing on May 8, 2018. Prior to sentencing Davis, the trial court informed Davis of the sentencing delays provided in La. C. Cr. P. art. 873, which Davis waived.
Thereafter, the court informed the defendant of the minimum and maximum sentences for each conviction. The court considered the following factors outlined in La. C. Cr. P. art. 894.1A, and of which require a sentence of imprisonment. It found that all the factors applied, namely:
(1) there is an undue risk that during a period of suspended sentence or probation the defendant will commit another crime;
(2) the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; and,
(3) a lesser sentence will deprecate the seriousness of the defendant's crime.
Next, the court considered all the factors in La. C. Cr. P. art. 894.1B, both mitigating and aggravating factors. It found four aggravating circumstances that applied to each count of conviction:
(1) the offender's conduct during the commission of the offense manifested deliberate cruelty to the victim;
(2) the offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth;
(3) the offender used his position or status to facilitate the commission of the offense; and,
(4) the offense resulted in a significant permanent injury or significant economic loss to the victim.
The court found no mitigating factors.
Thereafter, the court sentenced Davis to three terms of imprisonment on the three convictions as previously stated above, and it ordered the sentences to be served consecutively. The court stated that it ordered consecutive sentences due to the length of time of the abuse, the age of the child, and the trauma she suffered.
This appeal followed.
DISCUSSION
Davis's sole assignment of error is that the trial court erred in imposing an unconstitutionally harsh and excessive sentence. He argues that his sentence was excessive considering that he was 65 years old when he was arrested and the life sentence imposed will result in him dying in prison. Additionally, he argues that a life sentence followed by 50 years of imprisonment is an excessive sentence in violation of La. Const. art. I, § 20. Davis urges that the Louisiana Supreme Court has held that a sentence within statutory limits can be reviewed for constitutional excessiveness and that when a sentence imposes punishment that is grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering, it is unconstitutionally excessive. Davis contends that, considering the facts of the case, the sentences were excessive because they serve no purpose. Thus, he maintains that his sentences should be reversed and set aside, and the case remanded for resentencing.
A reviewing court applies a two-prong test to determine whether a sentence is excessive. First, we examine the record to determine if the trial court used the criteria set forth in *1200 La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. Boehm , 51,229 (La. App. 2 Cir. 4/5/17), 217 So.3d 596. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C). The goal of La. C. Cr. P. art. 894.1 is an articulation of the factual basis for the sentence, not simply a mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence, resentencing is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Fontenot , 49,835 (La. App. 2 Cir. 5/27/15), 166 So.3d 1215.
The defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation are important elements to consider. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. Boehm , supra . There is no requirement that specific matters be given any particular weight at sentencing. State v. Boehm, supra .
Second, a sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Boehm , supra . A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 01-0467 (La. 1/15/02), 805 So.2d 166 ; State v. Boehm , supra .
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a sentence will not be set aside as excessive. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Boehm, supra .
Regarding concurrent and consecutive sentences, La. C. Cr. P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. State v. Mitchell , 37,916 (La. App. 2 Cir. 3/3/04), 869 So.2d 276, writ denied , 04-0797 (La. 9/24/04), 882 So.2d 1168 ; State v. Burns , 44,937 (La. App. 2 Cir. 2/2/10), 32 So.3d 261. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Mitchell , supra .
After review, we find no merit in Davis's claim that his sentences for the three offenses are excessive individually or collectively.
*1201 First degree rape of a victim under the age of 13 carries a mandatory life sentence without benefits if the district attorney does not seek a capital verdict, i.e. a conviction punishable by death. La. R.S. 14:42(A)(4) and La. R.S. 14:42(D)(2)(b). Davis received the mandatory life sentence. Hence the trial court had no discretion to impose a lesser sentence than the one imposed absent exceptional circumstances that would render the statutorily required sentence constitutionally excessive. State v. Johnson , 96-3041 (La. 3/4/98), 709 So. 2d 679. Those circumstances do not exist in this case. The statute has no provision concerning the age of the offender, only the victim. In this instance, the 54-year age difference between Davis and his victim, K.M., a 9-year-old relative, renders this offense and the others even more egregious, especially considering the extended period of abuse and the age of the victim. Additionally, the fact that Davis will likely die in prison simply defines what life imprisonment constitutes. We are unaware of any sentence of life imprisonment that means something other than the natural life of the person serving the sentence. The court found several aggravating factors that clearly apply to this case. Considering the nature and depravity of the offense, the deliberate cruelty to the young victim, our sense of justice is not shocked by the life sentence. We find no abuse of discretion by the sentencing court by imposing this mandatory sentence.
Sexual battery on a victim under the age of 13 by an adult has a sentencing range of 25 years to 99 years, and the first 25 years imposed must be served without benefits. La. R.S. 14:43.1(C)(2). In Davis's case, the court sentenced him to 30 years and applied the mandatory probation, parole and suspension of sentence restrictions. Considering the sentencing range, this sentence leans toward the lesser end of the sentencing range. The same aggravating factors regarding this offense and the others apply. Arguably, had this sentence not been tacked on to the life sentence for first-degree rape, it could clearly be considered a lenient sentence given the aggravating factors and lack of any mitigating circumstances. This sentence is neither disproportionate to the offense nor does it shock our sense of justice. Accordingly, it is not excessive.
Finally, the crime of indecent behavior with juveniles on a victim under the age of 13 by an adult requires a term of imprisonment at hard labor for not less than two, nor more than 25 years. Davis received a 20-year sentence in which the first 2 years must be served without benefits. Although this is at the high end of the sentencing range, we do not find it to be excessive considering the age of the pre-pubescent victim, 9 years old, the age of Davis, 63, the family circumstances, namely Davis is K.M.'s granduncle, and the exercise of that relationship of power on an innocent victim. Considering these factors, we find no abuse of discretion, nor constitutional excessiveness.
We note that Davis particularly complains about the two consecutive sentences imposed for Counts 2 and 3 totaling 50 years of imprisonment after his life imprisonment sentence.
When it imposed the sentences and ordered that they be served consecutively, the trial court expressly considered length of time of the abuse, the age of the child, and the trauma that she has suffered as reasons for a consecutive sentence. The court stated it was particularly impressed with the victim's testimony. While the trial court noted that the victim, K.M., was uncomfortable testifying and it caused her great emotional distress to recount the events that occurred and the abuse that she endured, she was not overly emotional.
*1202 The court stated that K.M. was clear, articulate, and very convincing, and the jury and the trial court found her to be very credible. The court found that the jury's decision was well supported by the record, evidence, and testimony of all of the witnesses.
A court has discretion to impose consecutive rather than concurrent sentences. State v. Mitchell , supra ; State v. Burns , supra . Here, the trial court specifically and succinctly articulated reasons for ordering consecutive sentences, noting length of time of the abuse, the age of the child, and the trauma that she has suffered as reasons.
We find no abuse of discretion by the trial court in ordering that the sentences be served consecutively.
Accordingly, we hold that Davis's assignment that his sentences are constitutionally excessive is without merit.
Error Patent Review :
Review of the record reveals that the trial court imposed both sentences for count two and three without the benefit of parole, probation, or suspension of sentence for 25 years and 2 years, respectively. However, the minutes fail to note the restrictions of benefits.
We hereby order that the trial court minutes be amended to reflect the sentencing as imposed in the record. See State v. Shelton , 50,851 (La. App. 2 Cir. 9/28/16), 207 So.3d 549.
CONCLUSION
For the foregoing reasons, we conclude that the sentences imposed on the defendant were not constitutionally excessive. All the sentences were imposed within the sentencing ranges provided by law, and the trial court did not abuse its discretion. Accordingly, the defendant's convictions and sentences are affirmed with correction of the minutes.
AFFIRMED, ORDERED TO CORRECT MINUTES.

Although the expressions "great uncle" and "great aunt" are commonly used to designate this degree of kinship, the correct relationship designation of a brother or sister of one's grandparent is "granduncle" or "grandaunt." See Betty Eichhorn, "Relationship Chart." Eastman's Online Genealogy Newsletter , www.blogegon.com/2015/01/20/a-relationship-chart-by-betty-eichhorn.