945 So.2d 277 (2006)
STATE of Louisiana, Appellee
v.
William SHUMAKER, Appellant.
No. 41,547-KA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
Rehearing Denied January 18, 2007.
*280 Stephen A. Glassell, for Appellant.
J. Schuyler Marvin, District Attorney, J. Michael Lawrence, Assistant District Attorney, for Appellee.
Before CARAWAY, MOORE and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the Twenty-sixth Judicial District Court, Parish of Bossier, Louisiana. The defendant, William Shumaker, was convicted for the manufacture of a Schedule II controlled dangerous substance, methamphetamine, and was sentenced to 10 years without benefit of parole, probation, or suspension of sentence and a $10,000 fine or an additional 18 months in prison. La. R.S. 40:967 A. Shumaker appeals his conviction and sentence, which, for the following reasons, we affirm.

FACTS
Shumaker, along with co-defendants Teresa Waddell and Charles Estis, was arrested by Bossier Parish sheriff deputies and subsequently charged with violating La. R.S. 40:967 A for the manufacture of Schedule II CDS, methamphetamine. At his trial, the following facts were adduced.
On March 29, 2003, Shreveport Police Corporal Jeff Peters, who incidentally happened to be assigned to the narcotics division, was standing behind William Shumaker in the checkout line at a Wal-Mart in Shreveport, Louisiana and observed him buying three boxes of cold medicine. Corporal Peters then saw Shumaker hand those cold pills to another man outside the store before returning inside to buy two more boxes of cold medicine and plastic gloves. Corporal Peters, because of his experience in narcotics investigation and knowledge regarding the manufacturing of methamphetamine, was suspicious of Shumaker buying so much cold medicine. After Shumaker left the Wal-Mart, Cpl. Peters followed Shumaker and the other man to a Target store, again in Shreveport. Corporal Peters wrote down the license plate number on the vehicle, and *281 he used this information to find Shumaker's address, which he determined to be 120 Maplewood, Haughton, Bossier Parish, Louisiana. Corporal Peters conveyed this information to Deputy Al Langley of the Bossier Parish Sheriff's Office.
According to Dep. Langley, officers from the Bossier Parish Sheriff's Office then conducted a "trash pull," where they searched the garbage left at the curbside and found the following items: stems that field-tested positive as marijuana and a suspected marijuana cigarette; burned tin foil, which Dep. Langley said was commonly used to heat methamphetamine for inhalation; several plastic sandwich bags with the corners cut out, which is a common way to store methamphetamine for resale; and, a piece of paper with Shumaker's name and that street addressconfirming that the mobile home was Shumaker's residence. Based upon Cpl. Peters's observation of Shumaker buying large amounts of cold medicine, along with the items found in the trash of Shumaker's residence and information from a reliable confidential informant indicating that Shumaker was manufacturing and using methamphetamine, Dep. Langley obtained a warrant on April 25, 2003, to search Shumaker's residence and any vehicles on the premises.
Upon arriving to execute the search warrant, Deputy Langley recounted that officers noticed the odor of burned marijuana and saw Shumaker and another man sitting at a table. During the search of the residence, officers found the following items: burned marijuana cigarettes throughout the mobile home; syringes and spoons; a plate with a straw that tested positive for containing methamphetamine residue; digital scales; numerous boxes of cold medicine with ephedrine, the main ingredient of methamphetamine; and, a coffee can containing filters with methamphetamine residue. Additionally, officers found an ice chest in the back of a truck parked at the residence, and Dep. Langley testified that there was a strong ammonia odor when the chest was opened, and he believed the ice chest was used to store anhydrous ammonia. Inside the ice chest, officers found a thermos, a strainer, coffee filters containing debris from the crushed medicine pills, a plastic jug, funnels, and rubber tubingall items necessary for the production of methamphetamine. Also, inside the truck, officers found three cases of starter fluid, which contained ether, a plastic bag with approximately 2000 cold medicine pills, lithium batteries, and receipts from Wal-Mart showing where the cold medicine had been purchased. Behind the residence, officers found a coffee pot that tested positive for methamphetamine residue.[1]
Based upon the evidence presented at trial, the jury convicted Shumaker of manufacturing methamphetamine, a Schedule II CDS. He was sentenced to 10 years without benefit of parole, probation, or suspension of sentence and a $10,000 fine or an additional 18 months in prison. This appeal by Shumaker ensued.

DISCUSSION

Sufficiency of the Evidence
In his first assignment of error, Shumaker argues that the trial court erred in denying his motion for post-verdict judgment of acquittal on the ground that *282 the evidence was insufficient to support his conviction for manufacturing methamphetamine. Specifically, Shumaker argues that the evidence was insufficient, because (1) the residence was not a functional lab at the time of the search; (2) there was no evidence connecting him to the truck on the premises, which contained evidence of a methamphetamine lab; and (3) it was not clear from the testimony whether the bag of cold medicine pills was actually found inside the residence.
We review sufficiency first because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731, 734 (La. 1992); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, 348, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165, 1166. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App.2d Cir.09/18/02), 828 So.2d 622, 626, writ denied, 2002-2595 (La.03/28/03), 840 So.2d 566, and writ denied, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, 515, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens, 30,903 (La. App.2d Cir.09/25/95), 719 So.2d 610, 614, writ denied, 1998-2723 (La.02/05/99), 737 So.2d 747. This court has previously explained how to evaluate circumstantial evidence in the context of the sufficiency of the evidence:
The rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. However, this statutory rule for circumstantial evidence does not provide a separate test from the Jackson v. Virginia sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observation of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial *283 evidence. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson v. Virginia, to satisfy a rational jury that the defendant is guilty beyond a reasonable doubt.
State v. Dukes, 609 So.2d 1144, 1150-1151 (La.App. 2d Cir.1992), writ denied, 618 So.2d 402 (La.1993), writ denied, 93-1421 (La.12/15/95), 664 So.2d 435 (citations omitted).
Here, Shumaker was convicted for violating La. R.S. 40:967 A, which states:
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II;
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II (footnotes omitted).
Methamphetamine is listed as a Schedule II controlled dangerous substance. La. R.S. 40:964.
The prosecution presented evidence showing that Shumaker was under suspicion after: (1) being observed by a narcotics investigator buying the largest quantities of cold medicine allowed by store policy on three separate occasions in one day; and, (2) a search of his garbage revealed several plastic sandwich bags with the corners cut out and burned tin foil. The state also presented evidence of items police found inside the residence: burned marijuana cigarettes throughout the residence; syringes and spoons; a plate with a straw that tested positive for containing methamphetamine residue; digital scales; several boxes of cold medicine with ephedrine in the bathroom; a coffee can containing filters with methamphetamine residue; and, behind the residence near the steps of the back porch, a coffee pot that tested positive for methamphetamine residue. Additionally, the state presented evidence of items found in the truck parked at Shumaker's residence, including paraphernalia typically used for the production of methamphetamine, as well as 2000 cold medicine pillscontaining the key ingredient in methamphetamine.[2]
As experts in the investigation of narcotics and the production of methamphetamine, Dep. Langley and Dep. Phillips testified that they believed Shumaker's residence to be a methamphetamine lab. Specifically, Dep. Langley testified that:
 coffee filters are commonly used to filter the debris during the methamphetamine production process;
 lithium is commonly removed from lithium batteries so that it can be mixed with ephedrine and anhydrous ammonia;
 the ether in the starter fluid is often used in methamphetamine production to separate the methamphetamine oil from the "sludge";
 the coffee pot was probably used to actually cook the methamphetamine since it had residue;
 the microwave inside the residence could have been the heat source;

*284  the rubber tubing connected to the plastic jug was an HCO generator, which is used to "salt out" the methamphetamine in the final stage of production; and
 the approximate 2000 cold medicine pills with ephedrine would have produced six ounces of methamphetamine, which has a street value of $6,000.
The only missing component to make Shumaker's residence a functioning methamphetamine lab at the time of the search and seizure was the anhydrous ammonia. However, the fact that the residence was not a functioning methamphetamine lab at the time of the search and seizure does not negate the sufficiency of the state's evidence proving that Shumaker was manufacturing methamphetamine. Deputy Langley testified that it is not uncommon for those manufacturing methamphetamine to begin the process in one place and take it to another place to complete it, or to break down the lab after finishing a batch and store the components in different places.
Notably, there is no language in La. R.S. 40:967 A requiring the state to prove that Shumaker was in the actual process of manufacturing methamphetamine at the time of the search and seizure. Additionally, it is of no importance that the police failed to find actual methamphetamine in the residence. The statutory definition of manufacture, La. R.S. 40:961(24), does not use the term "finished product"; it does use the phrase "production, preparation, propagation, compounding, or processing." Nor does the definition of production, La. R.S. 40:961(34), use the term "finished product." See State v. Lingefelt, 38,038 (La.App.2d Cir.01/28/04), 865 So.2d 280; writ denied, XXXX-XXXX (La.09/24/04), 882 So.2d 1165. Furthermore, proof of methamphetamine residue is obviously evidence that Shumaker had succeeded in manufacturing the drug.
Moreover, the jury was clearly within its discretion to infer from the circumstantial evidencei.e., the fact that Shumaker made multiple purchases of cold medicine on a single day, coffee filters with methamphetamine residue, a coffee pot with methamphetamine residue, and other surfaces with methamphetamine residuethat Shumaker had manufactured methamphetamine at that residence. Whereas the state did not present evidence showing that Shumaker owned the truck on the premises that contained the HCO generator, lithium batteries, and bag of cold medicine pills, the jury could have reasonably inferred that those items on his premises, along with what was found inside and around the residence, were being used by Shumaker to produce methamphetamine.
Therefore, based upon the evidence presented at trial, there was sufficient evidence for a rational factfinder to conclude that Shumaker was guilty of manufacturing methamphetamine. Accordingly, the trial court did not abuse its discretion by denying his motion for post-verdict judgment of acquittal, and this assignment is without merit.

Motion to Suppress Evidence
In his second assignment of error, Shumaker argues that the trial court erred in denying his motion to suppress the evidence seized for the following reasons: (1) there was a lack of probable cause for the search warrant; and (2) the original search warrant was lost, an illegible date was on the state's copy and, Shumaker's copy of the search warrant left at the residence did not contain language authorizing a nighttime search.
Probable Cause
The Fourth Amendment to the United States Constitution protects "[the] *285 right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The La. Const. art. I, § 5 provides similarly. Accordingly, La. C. Cr. P. art. 162 implements the requirements of the federal and state constitutions regarding the issuance of search warrants:
A search warrant is issued only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure.
Probable cause to search exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place. State v. Wells, 593 So.2d 465, 467 (La.App. 2d Cir.1992), writ denied, 598 So.2d 357 (La.1992), citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. State v. Casey, XXXX-XXXX (La.01/26/00), 775 So.2d 1022, 1028, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Further, the affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant. Id.
Probable cause for the issuance of a search warrant does not involve certainties of proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior as understood by persons trained in law enforcement and based on the totality of the circumstances. State v. Johnson, 27,522 (La.App.2d Cir.12/06/95), 665 So.2d 1237, 1246, citing State v. Rodrigue, 437 So.2d 830 (La.1983). Further, the affidavit need not eliminate all possible innocent explanations of the described behavior. State v. Loera, 530 So.2d 1271, 1278 (La. App. 2d Cir.1988), writ denied, 536 So.2d 1252 (La.1989). In State v. Loera, supra at 1279, this court quoted from Illinois v. Gates, supra, for the proposition that "innocent" behavior can provide the basis for probable cause:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place . . .
[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to . . . impose a drastically more rigorous definition of probable cause than the security of our citizens demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts. (Citations omitted; emphasis added).
Thus, firsthand observation of criminal activity or contraband in the place to be searched, either by a police officer or by an informant, is not required to establish probable cause.
*286 Consequently, the issuing magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there exists a fair probability that contraband or evidence of a crime will be found in a particular place. State v. Profit, XXXX-XXXX (La.01/29/01), 778 So.2d 1127, 1130. The task of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. State v. Profit, supra. Further, a trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Lawrence, 40,278 (La.App.2d Cir.03/15/06), 925 So.2d 727, 728.
Here, Dep. Langley's affidavit in support of the search warrant for Shumaker's residence cited that:
 affiant had significant law enforcement experience in narcotics identification and investigation;
 affiant had received information from a reliable confidential informant that Shumaker was using and manufacturing methamphetamine;
 Corporal Peters had observed Shumaker and another man purchasing the maximum amount of cold medicine allowed by store policy at Wal-Mart, placing it in the trunk of his vehicle, and going back to purchase more cold medicine, starter fluid, and rubber gloves, and the practice of purchasing these items is common among those manufacturing methamphetamine; and,
 officers, in a search of the garbage left at the curbside of the residence, found a piece of paper with Shumaker's name and address, a substance that field-tested positive as marijuana, a piece of burned tin foil (common in the use of methamphetamine), and several plastic bags with the corners cut (common in the distribution of methamphetamine).
Under the totality of the circumstances, a trained law enforcement officer with experience in narcotics investigation can view the purchase of large quantities of cold medicine, lighter fluid, and rubber gloves as behavior suspicious of methamphetamine production because, the ephedrine in the cold medicine is the main ingredient for methamphetamine, lighter fluid is commonly used in the manufacturing process and rubber gloves are commonly used by those manufacturing methamphetamine due to it being a toxic process. Considering this, along with what was found in the search of Shumaker's trash, the judge had substantial basis for concluding that there was a fair probability that evidence of methamphetamine production would be found at Shumaker's residence.
Further, there was a nexus between suspecting that Shumaker was involved in manufacturing methamphetamine and the search of Shumaker's residence. Corporal Peters used the license tag number off of the vehicle Shumaker was driving that day to learn that the vehicle was registered to Shumaker and that his address was 120 Maplewood in Haughton. In the search of the garbage at that location, officers found a piece of paper with Shumaker's name and that address. Given the likelihood that a person manufacturing methamphetamine would have contraband at his residence and the fact that officers found plastic bags with the corners cut out, which the affiant averred was a known way to store methamphetamine for resale, there was a nexus between the suspected illegal drug activity and the search of Shumaker's residence. See State v. Profit, supra at 1130-1131.
*287 Shumaker also argues that the affidavit lacked probable cause, because there was no information establishing the reliability of the confidential informant. The affidavit simply stated that affiant had received information from a reliable confidential informant that Shumaker was using and manufacturing methamphetamine. Deputy Langley testified that he did not remember who the confidential informant was on this case and, therefore, could not testify as to the reliability of this confidential informant. However, Dep. Langley also testified that this confidential informant must have proven himself in the past or he would not have alleged that it was a reliable confidential informant. Recitations in an affidavit that the informant has previously given information leading to arrest are generally adequate to support the informant's reliability. State v. Johnson, supra at 1248. Even so, this search warrant was not dependent upon the confidential informant's reliability; rather, the warrant primarily relied upon the observations of Cpl. Peters and the evidence found in Shumaker's garbage. When a search warrant is not dependent upon the credibility of the confidential informant but on police observation, lack of evidence regarding the informant's credibility will not render a search warrant invalid. State v. Johnson, supra, citing State v. Grey, 408 So.2d 1239 (La.1982).
Shumaker further maintains that the warrant lacked probable cause because the information from Cpl. Peters about Shumaker buying large quantities of cold medicine was stale. A warrant may become stale if facts and circumstances at the time of its execution show that probable cause no longer exists. State v. Casey, supra at 1028. Staleness is only an issue when the passage of time makes it doubtful that the object sought in the warrant will be at the place where it was observed. Id. Corporal Peters observed Shumaker on March 29, 2003, the search warrant was signed on April 25, 2003, and the search warrant was executed on May 1, 2003. The passage of approximately one month did not make it doubtful that evidence of manufacturing methamphetamine would be found at Shumaker's residence. Therefore, staleness is not an issue in this case.

Original Warrant Lost and Language Authorizing a Nighttime Search
Shumaker also argues that the trial court erred in denying his motion to suppress because the original warrant signed by the trial judge was lost and he disputes whether the original warrant contained language authorizing a nighttime search. Shumaker further argues that the trial court erred because the date on the state's copy of the warrant is illegible.
The best evidence rule does not mandate production of the original warrant when testimony shows that the original has been lost or destroyed and there is no bad faith by the state. State v. Jackson, 30,473 (La.App.2d Cir.05/13/98), 714 So.2d 87, 94, writ denied, XXXX-XXXX (La.11/06/98), 727 So.2d 444, citing La. C.E. arts. 1002, 1004. Further, the "best evidence" rule is to be applied sensibly and with reason. Id. at 95. The original writing is required to prove the contents of the writing, unless otherwise provided. La. C.E. art. 1002. According to La. C.E. art. 1003, "[a] duplicate is admissible to the same extent as an original unless . . . [a] genuine question is raised as to the authenticity of the original. . . ." Further, La. C.E. art. 1004 allows evidence proving the contents of the writing if the original is lost or destroyed, unless the proponent did so in bad faith. Ultimately, under La. C.E. art. 1008, whether the evidence of the contents correctly reflects the contents of *288 the original is an issue for the trier of fact to determine. State v. Jackson, supra at 94.
Deputy Langley testified that when he prepared the search warrant, he printed two copies, placed a piece of carbon paper between the copies, and had the judge sign the top copy in blue inkthe bottom copy had a carbon-copy of the judge's signature. At the hearing on the motion to suppress, the state presented the original affidavit, signed in blue ink, and a duplicate original of the search warrant with the carbon-copy signature. Deputy Langley testified that he normally left the duplicate original of the search warrant with the carbon-copy signature at the residence and that the back side of that document contained a carbon-copy of the return from the search warrant, showing what was seized from the residence. This duplicate original of the search warrant with the carbon-copy signature contained the original return on the search warrant, showing what was seized from the residence. Deputy Langley testified that he believed the original warrant signed in blue ink was left at the residence instead of the duplicate original with the carbon-copy signature.
The duplicate original presented by the state at the hearing on the motion to suppress contains language authorizing a nighttime search of the described premises to be searched. Shumaker presented a copy of the search warrant left at his residence, not the original document left at his house, but that document does not contain language authorizing a nighttime search. Both La. C. Cr. P. art. 163(B) and La. R.S. 40:985 state a search or seizure shall not be made during nighttime unless the warrant expressly permits it. When comparing the two documents, it is obvious that one of the documents was altered. The signatures and handwritten date on both copies appear to be identical, but the signature line and date line are much higher on the page of Shumaker's copy than it is on the page of the state's copy. The state's copy clearly contains a carbon-copy of the signature and the date. If Shumaker's copy was truly representative of the original search warrant signed in blue ink, the date and signature line would be placed lower on the page. Accordingly, the trial court did not err in finding that the state's duplicate original was representative of the original search warrant. The trial court also was reasonable in dismissing Shumaker's claim that the original search warrant did not contain language authorizing a nighttime search.
Ultimately, a practical, common-sense evaluation of the circumstances set forth in the affidavit established a fair probability that evidence of methamphetamine use and production would be found at Shumaker's residence, and the issuing magistrate had a substantial basis for concluding that probable cause existed to search Shumaker's mobile home. The trial court's decision to deny his motion to suppress is due great weight, and the preponderance of the evidence does not favor suppression. Therefore, Shumaker's claim that the search warrant was not supported by probable cause is without merit.

Motion to Reconsider Sentence
In his final assignment of error, Shumaker argues that the trial court erred in denying his motion to reconsider sentence. Specifically, Shumaker maintains that his sentence for this offense should have been imposed concurrently with his conviction for attempted creation or operation of a clandestine laboratory for the unlawful manufacture of CDS.[3] Additionally, *289 in his motion for reconsideration of sentence, Shumaker alleged that he was a drug abuser and not a major drug dealer, and that his age of 54 made his total sentence for both offenses17½ years excessive. Finally, Shumaker argues that imposition of the $10,000 fine or an additional 18 months in prison was excessive because it was discretionary. For the following reasons, we agree with the trial court's sentence.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688, 698 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.06/24/98), 715 So.2d 641, 643. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049, 1051-52 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.04/22/04), 873 So.2d 747, 753, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Bonanno, 384 So.2d 355, 358 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288, 291 (La.1985). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.03/01/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.02/02/01), 783 So.2d 385. The trial court has broad discretion to sentence within the statutory limits, and the appellate court will not set aside a sentence as excessive absent a showing of manifest abuse of discretion. State v. Hardy, 39,233 (La.App.2d Cir.01/26/05), 892 So.2d 710, 712-713.
According to La. R.S. 40:967(B)(3), the sentencing range for manufacturing methamphetamine is not less than 10 years nor more than 30 years, and at least 10 years of that sentence must be served without benefit of parole, probation, or suspension of sentence. Review of the record shows that the trial court was cognizant of the sentencing considerations of La. C. Cr. P. art. 894.1. The transcript *290 of the sentencing hearing shows that the trial court reviewed the presentence investigation report, letters from residents in Shumaker's community that urged the trial court to impose a consecutive sentence, letters from Shumaker's family urging the trial court to impose a lenient sentence, Shumaker's statement to the probation and parole officer, and, Shumaker's significant criminal history, which includes numerous alcohol and drug related offenses. So considering, we do not believe that the trial court's imposition of the mandatory minimum sentence of 10 years was unreasonablesaid sentence is not grossly disproportionate to the seriousness of the offense, nor does it constitute needless infliction of pain and suffering. Further, considering that the trial court had the discretion to impose a fine of not more than $500,000, the imposed fine of $10,000 is not grossly disproportionate to the seriousness of the offense, nor does it constitute needless infliction of pain and suffering.
As to the trial court imposing the sentence consecutive with a previous sentence rather than concurrent, the trial court specifically stated that it was doing so because doing otherwise would lessen the nature of the offense and the verdict of the jury. According to La. C. Cr. P. art. 883, sentences for offenses which were not part of a common scheme or plan "shall be served consecutively unless the court expressly directs that some or all of them be served concurrently." Where offenses are committed on widely disparate dates, the trial court does not abuse its discretion by imposing consecutive sentences. State v. Griffin, 35,282 (La.App.2d Cir.12/05/01), 803 So.2d 245, 248.
Here, the presentence investigation shows that Shumaker committed the offense of creation or operation of a clandestine laboratory for the manufacturing of a Schedule II CDS almost one year after his arrest in the present case. Therefore, imposing a consecutive sentence was appropriate under La. C. Cr. P. art. 883. Further, considering the dangers of methamphetamine to society and the fact that Shumaker committed another methamphetamine-related offense after his arrest in the present case, the consecutive sentences do not shock the sense of justice. Rather, as the trial court noted, imposing concurrent sentences under the circumstances would have truly deprecated the seriousness of Shumaker's actions because he continued his illegal methamphetamine-related activities after this first arrest for manufacturing methamphetamine. Considering Shumaker's recent criminal history, the imposition of consecutive sentences was clearly not abusive. In fact, it is apparent that only lengthy incarceration will put a stop to Shumaker's propensity for illegal drug behavior. Thus, the trial court did not abuse its discretion, and the consecutive 10-year sentence is not constitutionally excessive. This assignment is therefore without merit.

CONCLUSION
Therefore, for the foregoing reasons, William Shumaker's conviction and sentence are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before CARAWAY, DREW, MOORE, LOLLEY and SEXTON, JJ.
Rehearing denied.
NOTES
[1] Deputy Langley also described how officers called Waddell to come and pick up her 2-year-old child, who was asleep in the house while the search ensued. When Waddell arrived, she consented to a search of her vehicle, wherein officers found a metal breath mint container with 7.7 grams of methamphetamine inside of it. Waddell also lived at the residence.
[2] The search warrant included a search of all vehicles present on the property as well as any and all outbuildings.
[3] On April 21, 2004, after Shumaker's arrest in this matter, Shumaker was presumably free on bail awaiting the instant trial in Bossier Parish, when Caddo Parish Sheriff Officers arrested him. He was charged with conspiracy to manufacture a Schedule II CDS and creation or operation of a clandestine laboratory for the unlawful manufacture of a CDS. Shumaker was ultimately convicted of attempted creation or operation of a clandestine laboratory for the unlawful manufacture of a CDS. He was sentenced to 7½ years at hard labor and fined $10,000.00. See State v. Shumaker, 40,275 (La.App.2d Cir.10/28/05), 914 So.2d 1156.