STEPHENS, J.
This criminal appeal arises from the First Judicial District Court, Caddo Parish, State of Louisiana. The defendant, Jessie Jones, was charged with one count of indecent behavior with a juvenile under the age of 13, in violation of La. R.S. 14:81(A)(1) and (H)(2). After a jury trial, Jones was found guilty as charged and sentenced to ten years at hard labor, with one year to be served without benefit of probation, parole, or suspension of sentence. Jones's motions for new trial, post-verdict judgment of acquittal and reconsideration of sentence were denied. On appeal, Jones challenges his sentence, claiming it is excessive. For the following reasons, Jones's conviction is affirmed and his sentence is vacated and remanded for resentencing.
FACTS
The victim in this case is A.J. Jones's granddaughter, who was nine years old at the time of the offense. Jones was 65 years old at the time of the offense. Jones was charged by amended bill of information with indecent behavior with a juvenile under the age of 13, in violation of La. R.S. 14:81(A)(1) and (H)(2).
Jones's trial commenced, wherein six witnesses testified, all called by the state. The victim's great aunt and Jones's sister, B.B., testified that A.J. often spent nights with her and Jones and went to church with them on Sundays. A.J. would sleep on the couch when she spent the night. On August 16, 2014, A.J. and her brother spent the night with B.B. and Jones, and the children slept on separate couches in the living room. B.B. testified that during the night, A.J. knocked on her bedroom door, woke her, and told her that her "PawPaw" (i.e. , Jones) was trying to touch her. B.B. stated that A.J. was "shook up," and B.B. was concerned. B.B. left the bedroom and asked Jones what happened, to which he only shrugged his shoulders with no verbal reply. A.J. slept with B.B. the rest of the night and went home to her mother the following day after church. B.B. did not tell A.J.'s mother about the incident.
A.J. testified and stated that she was in seventh grade and her birthday is September 23, 2004. She identified B.B. as her "auntie," but stated she calls her "Nana." A.J. recalled that in 2014 she would often go to B.B.'s house to visit on the weekends. She further recalled going to the Gingerbread House[1] in August of 2014 and talking with a lady there and that the conversation was recorded. A.J. confirmed that she had watched the recording of the *1069 interview. The interview was played for the jury with no objection. The videotape was admitted into evidence after A.J. verified the authenticity of the recording and identified Jones in court. The defense did not cross-examine A.J.
A.J.'s mother, S.J., testified and corroborated that A.J. often spent the night at B.B's house. According to S.J., when A.J. came home after church on August 17, 2014, she told her that "PawPaw touched my, you know, tee-tee [tu-tu]." S.J. related that A.J. referred to her vagina as her "tu-tu." S.J. was present, but in another room, during the Gingerbread House interview.
Jennifer Flippo, a forensic interviewer for the Gingerbread House, testified regarding her interview with A.J. on August 29, 2014. Flippo recounted her conversation with A.J., stating that A.J. said that she was asleep on the couch at B.B.'s house when she felt something that woke her up, and she swatted at a hand that was touching her. A. J. related to Flippo that when she looked around, Jones was hiding behind the couch. A.J. told Flippo that she was wearing a dress and that Jones had touched her "tu-tu," on and inside her underwear. Since it was clear from A.J.'s reference to her underwear, Flippo did not use the anatomical drawings to have A.J. identify the body part that Jones touched. Flippo's notes taken during the interview with A.J. were admitted into evidence as Exhibit S-2.
Shawna Thomas testified that Jones, whom she identified in court, had dated her mother about 30 years prior, when she was seven to nine years old. Shawna testified that once during that time, while the family was watching a movie, Jones called her into the dark kitchen and made her perform oral sex on him. Shawna further described instances where Jones would have her and her half-sister lie on a pallet on the floor, with Shawna in the middle, and he would rub his penis between her legs. She could not recall how many times this happened but stated that it happened "quite often," when her mother would go to work. Shawna testified that she did not tell anyone initially because Jones told her that he would kill her mother if she did. Eventually, when Shawna was 12 years old, she told her counselor at school but asked her not to tell anyone. Shawna also told her father's girlfriend but asked her not to tell her father because she was afraid that Jones would hurt her father or that her father would kill Jones.
Detective Monique Robinson of the Shreveport Police Department's sex crimes unit testified regarding her investigation of the offense. Detective Robinson corroborated A.J.'s testimony and that A.J.'s mother had reported the incident to the authorities. Detective Robinson arranged the Gingerbread House interview and testified regarding the development of the second victim, Thomas.[2]
After completion of the State's witnesses, the state rested, and the defense did not present evidence. Following deliberation, the jury returned a unanimous verdict of guilty as charged, and the trial court ordered a presentence investigation ("PSI"). Jones was sentenced to ten years at hard labor, with one year to be served without benefit of probation, parole, or suspension of sentence. Jones's motions for new trial, post-verdict judgment of acquittal and reconsideration of sentence were denied. This appeal by Jones ensued.
DISCUSSION
Jones's sole assignment of error challenges his sentence. He contends the sentence *1070 of ten years at hard labor imposed by the trial court is harsh and excessive and should be reduced. Specifically, Jones argues that under La. C. Cr. P. art. 894.1, the trial court failed to give sufficient weight to the mitigating factors and failed to adequately consider Jones's social history, work experience, education, or the extent to which this sentence would entail a hardship upon Jones's family. We disagree.
The trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Diaz , 46,750 (La. App. 2 Cir. 12/14/11), 81 So.3d 228. The reviewing court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. DeBerry , 50,501 (La. App. 2 Cir. 4/13/16), 194 So.3d 657, writ denied , 2016-0959 (La. 5/1/17), 219 So.3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos , 419 So.2d 475 (La. 1982) ; State v. DeBerry, supra . The factors to be considered by the trial court are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. DeBerry, supra . There is no requirement that specific matters be given any particular weight at sentencing. State v. DeBerry, supra ; State v. Shumaker , 41,547 (La. App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied , 2007-0144 (La. 9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Bonanno , 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. DeBerry, supra .
Whoever commits the crime of indecent behavior with juveniles on a victim under the age of 13 when the offender is 17 years of age or older shall be punished by imprisonment at hard labor for not less than 2, nor more than 25 years. At least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:81(H)(2).
Jones's sentence is on the low end of a midrange sentence and is not excessive. First, the record indicates that the trial court adequately considered the sentencing factors set forth in Article 894.1. During the sentencing hearing, the trial court stated that it had taken into consideration the PSI. The trial court further noted that Jones had shown no remorse for his acts or even acknowledged they took place. Additionally, the trial court noted that a lesser *1071 sentence would deprecate the seriousness of the crime and pose an undue risk of recidivism. Further still, the trial court noted the young age of the victim. Finally, the trial court stated that it took into consideration the testimony presented at trial. While the trial court could have elaborated on any mitigating factors, the trial court cited review and consideration of the PSI, and the record clearly shows an adequate factual basis for the sentence imposed. Remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, supra .
Further, the sentence is not constitutionally excessive. As the trial court emphasized, Jones abused his position of trust and authority to sexually fondle his nine-year-old granddaughter. Given Jones's lewd conduct and the evidence that he has engaged in such deplorable conduct with at least one other minor child, the ten-year sentence imposed by the trial court does not shock the sense of justice, nor is it grossly disproportionate to the severity of the offense. This assignment of error is without merit.
Error Patent
However, the sentence imposed by the trial court is illegally lenient. The trial court imposed a sentence with one year to be served without benefits; however, La. R.S. 14:81(H)(2) requires that at least two years be served without benefits. This error is not automatically corrected under La. R.S. 15:301.1 because the penalty language of the statute gives the trial court discretion in determining the exact length of time that benefits are to be withheld. Accordingly, the sentence must be vacated and the case remanded to the trial court for resentencing in compliance with La. R.S. 14:81(H)(2). See State v. Boehm , 51,229 (La. App. 2 Cir. 4/5/17), 217 So.3d 596 ; State v. Rose , 50,861 (La. App. 2 Cir. 9/28/16), 206 So.3d 1102.
CONCLUSION
For the aforementioned reasons, the conviction of Jessie Jones is affirmed, and the sentence is vacated and remanded for resentencing to determine the period of benefit restriction.
AFFIRMED IN PART, REMANDED IN PART.

Gingerbread House is a local child advocacy center.

The record indicates that at the time of this trial, Jones was facing charges in Bossier Parish for offenses against Shawna Thomas.