Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,893-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TERRY DEWAYNE POWELL                        Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 21CR31625

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Bruce Gerard Whittaker

TERRY DEWAYNE POWELL                   Pro Se

CHARLES BLAYLOCK ADAMS                 Counsel for Appellee
District Attorney

EDWIN L. BLEWER, III
LISA D. LOBRANO
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and ROBINSON, JJ.

**THOMPSON, J.**

Early one April morning, Terry D. Powell ("Powell") entered a hotel in Mansfield, Louisiana, to rob it, and while there, he fatally shot the elderly night clerk three times. He then fled the hotel with the cash from the register. Over an hour later, he returned to the hotel and, this time, encountered a hotel guest standing outside. While making demands for valuables from the hotel guest, Powell shot this second victim two times, even though he was also fully complying with Powell's every demand. This victim survived his wounds. These events were captured on surveillance video in their entirety.

Powell was subsequently arrested and convicted by a jury of the second-degree murder and armed robbery of the hotel clerk and of the attempted second-degree murder and attempted armed robbery of the hotel guest. He received the maximum sentence on each count, and the trial court ran the sentences for the crimes committed against each victim concurrently. However, the court elected to run the second-degree murder and attempted second-degree murder sentences consecutive to each other because the court found that the events were separate in time and distinct in the victims. Powell now argues that the running of those two sentences consecutively is unconstitutionally excessive. We disagree, and for the reasons set forth below, we affirm the defendant's sentences, but remand for correction of the court minutes.

## FACTS AND PROCEDURAL HISTORY

As captured on surveillance videos, in the early morning hours of April 12, 2021, Powell entered and then left Snacks, a gas station next door to a Best Western hotel in Mansfield, Louisiana, wearing a distinctive black and red hoodie and khaki pants. Powell then walked onto the property of the Best Western and entered the lobby. The night desk clerk, 75-year-old Lynda Palmer ("Lynda"), was on the phone with her daughter, Latoya Heather Palmer ("Heather"), when Powell walked into the lobby to rent a room. They ended their phone conversation, and Heather later testified that she expected her mother to call her back. Powell handed his identification to Lynda in order to rent a room but, soon after, pulled out a pistol and pointed it at her.

On surveillance video that was later played at trial, Lynda can be seen fully cooperating and giving Powell her personal property and cash from the register. Lynda moved to the second register to remove its cash, and even though she was still complying with his demands and opening the second register, Powell shot her three times in the upper torso at close range. She collapsed backwards onto the desk chair behind her and died, all of which was captured on surveillance video. Powell fled the Best Western lobby and discarded the distinctive hoodie he was wearing outside in some nearby bushes.

Approximately an hour later, Powell is again seen on surveillance entering Snacks with Phivonta Jackson ("Jackson") and his sister. At this time, Powell is wearing a black t-shirt and shorts. While in the Snacks, he bought a distinctive orange beanie, and the group then left. Thirty minutes later, Jackson and Powell returned to Snacks, and this time Powell is

2

wearing the orange beanie and carrying a backpack with a cartoon depiction. After a short while, Powell again left Snacks. Powell then returned to the Best Western, retrieved his hoodie from the bushes, and re-entered the lobby at 3:37 a.m., where Lynda's dead body had not yet been discovered. Powell is seen on surveillance video grabbing his ID card from the counter where Lynda left it during his initial visit to the hotel. On surveillance video, Powell can be seen nudging Lynda's body and then patting her down in an apparent attempt to locate additional valuables.

That fateful April morning, Matthew Yager ("Yager") was a guest in the Best Western while on business for his oil field job with Halliburton. He had a work meeting at 4:00 a.m. the morning of Lynda's murder and testified that he went outside downstairs before the meeting for a cigarette. He later testified that when he left the lobby and went outside, he was approached by Powell, who asked him for money and the keys to a vehicle. Yager told him that he did not have money or keys on him, and Powell walked off. A few minutes later, Powell returned with a gun in his hand and repeated his demands. Yager told him that he did not have keys, he was there for work, and then he walked into the lobby for safety.

As Yager entered the hotel lobby, he looked over toward the counter and saw Lynda's body for the first time and realized that she was dead. Powell followed Yager into the lobby and demanded his cell phone. Yager complied, and as he reached for his phone, Powell shot him in the stomach. Yager hunched over with his hands up, and Powell shot him again, this time through his right hand and into his chest. Yager ran back up the hallway toward the elevator bank and called 911. Powell ran out of the Best Western

3

at 3:52 a.m., this time leaving the hotel for the final time, over an hour from when he originally fled after killing Lynda.

Police responded to Yager's 911 call and found him in the hotel, on the floor of the lobby and Lynda behind the counter. Yager told the police that the perpetrator was a young, thin black man in a black jacket with a red hoodie, armed with a revolver. Yager was taken to the hospital with sustained severe and lasting injuries but survived the two gunshot wounds. After a few days of hospitalization, Yager was shown a photo lineup and identified Powell as the perpetrator. He also later identified Powell in court at the trial.

On the morning of Lynda's murder, her daughter, Heather, received a text on her cell phone from an unknown number stating, "It's your mother. I don't know how, but I forgot the password to my phone." The phone number used to send this text was later identified as belonging to Powell. Heather replied with "R u okay?" and made other calls and texts to her mother's phone, with no response. She then received alerts of unusual transactions on the credit cards that she and Lynda shared as a joint account. Concerned, she got dressed and went to the hotel, where she saw the crime scene tape and learned her mother had died. She provided the police with her phone and told them about the unusual texts and alerts.

Later that day, Powell was found by police hiding in a closet at a nearby apartment complex in Mansfield, Louisiana, and was arrested. No weapon was found on his person, but a search of the area yielded a pistol in a different nearby closet. The search also produced the backpack seen in the surveillance videos, three spent .38 caliber casings, and the orange beanie hat. The remaining .38 caliber casings, two spent and one unspent, were

4

recovered in the pistol. A health insurance card, Louisiana ID card, mobility impaired ID card, and Visa credit card all in the name of Lynda Palmer were found shoved into the cushions of a chair in the apartment where Powell was located. Powell's fingerprints were found on Lynda's cards. Police were able to find a Facebook photo of Powell, dated March 19, 2021, where he is wearing what appears to be the same black and red hoodie worn the morning of the shootings and robberies. The police also recovered Lynda's cell phone from Powell, where searches had been made for "how to add money on cash app," "how to transfer money with a credit card," and "breaking news Mansfield, Louisiana." Lynda's phone also included a search for "Greyhound bus tickets, bus schedules and prices."

Police recovered messages from Powell's Instagram account stating "I'm otw [on the way] I just pulled a murder. Meet me at a Greyhound Station." Another message stated, "But twin I need you to cash out a hundred and twenty dollars so that I can get on the bus. The money I hit for, it was on a card, but they locked her shit up now." Another message stated, "I went fed last night," which a police officer later described to the jury meant that Powell had committed a serious offense, a federal offense. Finally, there was a message stating, "If I go, I ain't ever getting out."

Powell was charged with the second-degree murder of Lynda, the attempted second-degree murder of Yager, the armed robbery with a handgun of Lynda, and the attempted armed robbery with a handgun of Yager. He pled not guilty on August 12, 2021. A jury trial was held on January 24, 2022. Testimony was provided at trial by Heather and Yager. A variety of law enforcement professionals also testified regarding the evidence collected, witnesses interviewed, surveillance video, fingerprint

5

analysis, gun casing analysis, and DNA analysis.  The various surveillance videos were collated onto one chronological video that was time stamped, included overlapping sound from Yager's 911 call, and was played in its entirety for the jury.  After deliberation, the jury unanimously found Powell guilty of all four charges.

On February 14, 2022, the trial court conducted Powell's sentencing hearing.  The court heard testimony from Heather, who described how her mother worked because she loved people.  She described how Lynda loved her family, especially her grandchildren, and had many years left to live.  She pled with the court to give Powell the maximum sentence and argued even that would still not be enough for the loss she suffered.  Another of Lynda's daughters testified, describing the emotional and physical pain she has endured since her mother's sudden death and requested that the trial court sentence Powell to the maximum possible sentence.  Lynda's son testified that he was traumatized by her death and had never seen anything like it, even when serving in the military.  He requested the court sentence Powell to the maximum.  A letter from Yager's wife was read to the court, in which she describes receiving a phone call from her husband at 3:56 a.m. while he was waiting for the police and medical personnel to arrive, telling her that he loved her, that she was his whole world, and that he had been shot.  She did not learn until 6:00 a.m. that he had survived the shooting.  She described the multiple surgeries and months of rehabilitation that Yager has endured and continues to receive.  She described the financial burden his recovery has placed on their family, as he does not receive his full salary and she had to take a leave of absence to be his caretaker.  As a result of these events, their lives had been turned upside down and forever altered.

6

After the witness statements, the trial court attempted to elicit information from Powell. When asked the names of his parents, Powell at first refused to answer and then stated that he did not know. Powell claimed that he attended high school in a juvenile facility in Georgia but then claimed to never have been arrested before. He argued with the court about whether he was on probation in Georgia prior to this incident. He lied to the court about his arrests for assault on a schoolteacher and simple burglary as a juvenile. The record reflects Powell was combative and disrespectful of the court and had to be removed. The court stated on the record that as he was being removed, Powell blew kisses to the victims' families, which the court noted was extremely derogatory, inappropriate, and unacceptable. False bravado was all Powell could contribute to the sentencing hearing.

The trial court stated that it considered the information presented during trial, the statements made in court, and the applicable sentencing guidelines in reaching its decision on sentencing. The court sentenced Powell to life at hard labor, without benefit of parole, probation, or suspension of sentence on the second-degree murder of Lynda, noting that Powell should have known that the victim was particularly vulnerable or incapable of resistance due to extreme advanced age or disability. It sentenced Powell to 99 years at hard labor, without the benefit of parole, probation or suspension of sentence, for the armed robbery of Lynda. These sentences were to run concurrently with one another. Powell was then sentenced to 50 years at hard labor for the attempted second-degree murder of Yager and sentenced to 49½ years at hard labor for the attempted armed robbery of Yager. The court noted that Powell created a risk or death or great bodily harm as to both victims and used actual violence in the

commission of the offenses. He also committed murder and attempted to commit murder to conceal the commission of armed robbery and attempted armed robbery. The court noted that Powell showed deliberate cruelty to both victims, as neither one resisted his demands.

Finally, the trial court took specific notice of the fact that the crimes of second-degree murder and armed robbery and the crimes of attempted second-degree murder and attempted armed robbery occurred approximately an hour and a half apart, as captured on the surveillance videos. The court found that there were two distinct sets of criminal activity. Considering this, the court ordered the sentences for second-degree murder and attempted second-degree murder to run consecutive to one another because they were two separate crimes. It noted that a lesser sentence would deprecate the seriousness of the crimes. Powell filed a motion to reconsider sentence, which was denied. This appeal followed, challenging the consecutive nature of the sentences.

## DISCUSSION

In his sole assignment of error, Powell argues that his sentence was unconstitutionally excessive, particularly that his life sentence at hard labor for the second-degree murder of Lynda and the 50-year sentence at hard labor for the attempted second-degree murder of Yager should not run consecutively to each other.

Appellate review of sentences for excessiveness is a two-prong inquiry. Under the first prong, the record must show that the trial court considered the factors in La. C. Cr. P. art. 894.1. The primary goal of La. C. Cr. P. art. 894.1 is for the court to articulate the factual basis for the sentence imposed, and not simply mechanical compliance with its provisions.

However, if the record reflects that the trial judge adequately considered the guidelines of the article, then he is not required to list every aggravating or mitigating circumstance. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270; *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *Sandifer*, *supra*. In sentencing, the important elements which should be considered are the defendant's personal history (age, familial ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *Sandifer*, *supra*. There is no requirement that specific matters be given any particular weight during sentencing. *Sandifer*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351. As noted above, the trial court in the present matter gave adequate consideration of La. C. Cr. P. art. 894.1 and articulated the factual basis for Powell's sentencing. This prong of the analysis has been satisfied.

Under the second prong of the analysis, this Court must determine whether the sentence is unconstitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-

9

0630 (La. 10/24/14), 151 So. 3d 600. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *Sandifer*, *supra*.

A trial court maintains wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of such discretion, a sentence will not be set aside as excessive. Upon review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Weaver*, *supra; State v. Davis*, 50,149 (La. App. 2 Cir. 11/18/15), 181 So. 3d 200.

As a general proposition, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *Sandifer*, *supra*; *State v. Collins*, 53,704 (La. App. 2 Cir. 1/13/21), 309 So. 3d 974; *State v. Cotten*, 50,747 (La. App. 2 Cir. 8/10/16), 201 So. 3d 299. However, the trial court nevertheless remains in the best position to consider the aggravating and mitigating circumstances of a particular case and is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L.Ed. 2d 539 (1996).

We have carefully reviewed the record in the present case, including the entire surveillance video presented to the jury, which shows Powell cruelly, deliberately, and without provocation or resistance murdering and robbing 75-year-old Lynda and attempting to murder and rob Yager, both of whom were fully complying with his every instruction. The entirety of Powell's crimes, captured on video, are shocking and showcase a blatant disregard for human life. His actions at the sentencing hearing indicate his obvious lack of remorse and, moreover, were clearly intended to further

harass and harm the victims of his crimes. The unprovoked shooting of an elderly woman and an unarmed victim clearly establish him as both a coward and one of the worst of the worst for which the legislature has made provisions for appropriate sentencing and accountability to society. Powell being sentenced to the maximum on all charges is both appropriate and necessary.

Powell argues that his sentences were unconstitutionally excessive because the trial court elected to run to his life sentence for second-degree murder consecutively with his 50-year sentence at hard labor for attempted second-degree murder. With respect to whether two or more sentences should be served concurrently or consecutively, La. C. Cr. P. art. 883 provides in part:

> If the defendant is convicted of two or more offenses based on the **same act** or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

(emphasis added).

Trial courts have limited discretion to order that multiple sentences can be served concurrently or consecutively. *Sandifer*, *supra*; *State v. Allen*, 52,318 (La. App. 2 Cir. 11/14/18), 260 So. 3d 703; *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836. Concurrent sentences that arise from a single course of conduct are not mandatory; likewise, consecutive sentences under those circumstances are not necessarily excessive. *State v. Harris*, 52,663 (La. App. 2 Cir. 8/14/19), 277 So. 3d 912; *Nixon*, *supra*; *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795. However, where

11

convictions stem from **separate incidents** involving different victims and occurring over a lengthy period of time, the resulting consecutive penalties will not be found to be an abuse of discretion. *State v. Bailey*, 50,097 (La. App. 2 Cir. 9/30/15), 180 So. 3d 442.

We have previously held that consecutive sentences were appropriate when a defendant robbed a store at 12:15 a.m. and then attempted to rob another store at 4:10 a.m. but was unable to gain entry. *State v. Burns*, 44,937 (La. App. 2 Cir. 2/2/10), 32 So. 3d 261. Minutes later, he returned to the original store to commit another offense. This Court found that the three offenses clearly did not arise out of the same transaction or occurrence and consecutive sentences were appropriate. *Id.*

In the present matter, the trial court found that Powell's crimes did not arise from a single course of conduct. We agree. Although all four of the crimes committed by Powell during his night of violence occurred at the same location, they are separated into two occurrences by both the period of time between them and the victims who were harmed. The surveillance video is time-stamped and clearly shows Powell committing the crimes of second-degree murder and armed robbery of Lynda at 2:02 a.m. At this time, Powell was wearing a distinctive red and black hoodie. After murdering and robbing Lynda, Powell leaves the Best Western and is gone for over an hour. At 3:00 a.m., he reappears at Snacks, wearing an entirely different outfit and buying a new hat. He does not return to the Best Western until 3:37 a.m., and he has a chance encounter with Yager at 3:49 a.m., which results in the attempted murder and robbery of Yager.

The murder and robbery of Lynda is a separate occurrence from the course of conduct that resulted in the attempted murder and attempted armed

robbery of Yager. The crimes are notably separated by both time and victims. Powell left the scene of the crime completely and changed his clothes between the two courses of conduct. We find that the trial court's decision to run his homicide convictions consecutively is entirely appropriate in this matter. Therefore, Powell's assignment of error is without merit.

## ERROR PATENT

Our error patent review reveals that the minutes and commitment order do not accurately reflect the trial court's sentencing. The transcript of the sentencing hearing reflects that the trial court sentenced Powell as follows: (1) to life in prison at hard labor, without the benefit of parole, probation, or suspension of sentence for the second-degree murder of Lynda; (2) to 50 years at hard labor without the benefit of parole, probation, or suspension of sentence for the attempted second-degree murder of Yager; (3) to 99 years at hard labor, without the benefit of parole, probation, or suspension of sentence as to the armed robbery of Lynda; and (4) 49½ years at hard labor for the attempted armed robbery of Yager. The minutes of the sentencing hearing and the commitment order incorrectly switched the sentences for counts two and three and incorrectly stated which counts were to be run consecutively and which were to be run concurrently.

Where there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721. Therefore, we remand this matter to the trial court with instructions to amend the minutes and the commitment order to accurately reflect the sentences imposed in the transcript.

13

An examination of the transcript indicates that the trial court erred in sentencing Powell with regard to his conviction for attempted armed robbery because it failed to state that the sentence was imposed with restricted benefits. An illegally lenient sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882(A). This correction may be made despite the failure of either party to raise the issue. *State v. Dowles*, 54,483 (La. App. 2 Cir. 5/25/22), 339 So. 3d 749. When the trial court fails to order that a sentence be served without benefits as statutorily mandated, the sentence will be automatically served without benefits for the requisite time period. *Id.* La. R.S. 14:27 and 14:64 statutorily mandate that the attempted armed robbery sentence be served without benefits, and the trial court's failure to declare the sentence be served with restricted benefits is harmless and self-correcting.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's sentences. The trial court is instructed to amend the court minutes and commitment order to correctly reflect the sentences imposed at the sentencing hearing.

**SENTENCES AFFIRMED. REMANDED WITH INSTRUCTIONS.**